UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| In re 11447 Second Street I, LLC, *et al.*, <br><br> Debtor/Debtor-in-Possession. | Bankruptcy No. 12-B-84690 <br> (Jointly Administered and Substantively Consolidated) <br> Chapter 11 <br> Judge Thomas M. Lynch |

## MEMORANDUM OPINION

This matter comes before the court on the motion of Creditor McFarland State Bank ("McFarland Bank") for relief from the automatic stay as to a commercial shopping center located in Roscoe, Illinois. For the reasons set forth herein, the court will grant McFarland Bank's motion.

## JURISDICTION AND PROCEDURE

Jurisdiction lies over this matter pursuant to 28 U.S.C. § 1334. Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois refers authority over the matter to this court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(g) for which this court has proper jurisdiction and authority to hear, determine and enter final orders and judgments.

## FACTS AND BACKGROUND

11447 Second Street I, LLC and eight other affiliated entities (collectively, the "Debtors") filed voluntary petitions for protection under Chapter 11 of the Bankruptcy Code on

or about December 18, 2012.[1] On motion of the nine Debtors, their cases were substantively consolidated on January 14, 2013. The Debtors, together with two other limited liability companies who did not file bankruptcy petitions, collectively own the shopping center, sometimes called "Second Street Plaza," that is the subject of McFarland Bank's motion (the "Shopping Center"). The Debtors do not dispute that the Shopping Center constitutes "single asset real estate" as defined in 11 U.S.C. § 101(51B) and that 11 U.S.C. § 362(d)(3) therefore is applicable.

Each of the nine Debtors attested to and filed schedules with their pre-consolidated cases that valued their respective interests in the Shopping Center to be between $24,000 and $204,000, the sum of which totals $1,116,000.[2] Schedule D of each of the Debtors' petitions listed McFarland Bank as having a total claim of $2,187,500 secured by the Shopping Center. The Debtors also listed the Winnebago County Treasurer as having a secured claim totaling $32,000 for 2012 real estate taxes on the Shopping Center. During the hearing on its motion, McFarland Bank presented uncontroverted testimony that the bank's claim as of the petition date totaled $2,304,424.03.[3]

On March 8, 2013, McFarland Bank filed its motion for stay relief. It alleges that cause exists to lift the stay under 11 U.S.C. § 362(d)(1), (2) and (3) to enable the bank to continue its prepetition foreclosure action against the Shopping Center. McFarland Bank asserts three

---

[1] Seven of the nine debtors filed their petitions on December 18, 2012. 11447 Second Street VII, LLC filed its petition on December 19, 2012, and 11447 Second Street III, LLC filed its petition on December 21, 2012.

[2] This appears to be an estimation of the *pro rata* percentage interest of each individual debtor, as the Debtors each listed the total value of the Shopping Center as $1,200,000 in Schedule D.

[3] McFarland Bank had not filed a proof of claim as of the date of the hearing. On July 9, 2013, after the conclusion of the evidentiary hearing on its motion, McFarland Bank filed a timely proof of claim for $2,304,424.

grounds for relief in its motion.[4] First, McFarland Bank claims that the Debtors commenced their Chapter 11 cases in bad faith, arguing that it is bad faith to file a bankruptcy case when a single-asset debtor with only one creditor files a bankruptcy case in response to a foreclosure proceeding. Second, McFarland Bank argues that the property is depreciating in value and the Debtors, possessing no equity in the property, have to provide adequate protection of the bank's interest. Third, McFarland Bank argues that the property will not generate sufficient rents to fund an effective reorganization and is, therefore, not necessary to an effective reorganization. The motion was set for an initial hearing on March 13, 2013.

The court allowed limited discovery at the parties' request. The Debtors filed their written response opposing the motion on April 5, 2013, to which McFarland Bank replied in a brief filed on April 12. In the meantime, on March 15, 2013, the Debtors sent McFarland Bank a check for $4,875 together with a letter containing a purported reservation of rights and the following statement:

> Pursuant to Section 362(d)(3)(B) of the Bankruptcy Code, the Debtors are making monthly payments to the lender in an amount equal to the non-default contract interest established under the loan documents. Enclosed is the Debtors' check in the amount of $4,875.00 which represents this payment to the lender. . . . The amount of this check was calculated as follows:
>
> | | |
> |---|---|
> | Value of Collateral: | $1,000,000 |
> | Non-default contract rate of interest: | 5.85% |
> | Monthly payment of interest at non-default rate | $ 4,875.00 |

---

[4] The bank also raised a fourth argument in its motion. The motion was filed before the 90-day period to file a plan or commence interest payments under Section 362(d)(3) had elapsed, but the bank argued that it did not believe that the Debtors would file a plan or commence payments by the deadline. The Debtor did in fact commence making payments before the deadline, but only based on a value for the Shopping Center of $1,000,000. As noted below, because McFarland Bank demonstrated grounds to lift the stay under Section 362(d)(2), the court need not dwell on the bank's alternative argument under Section 362(d)(3).

Enclosed with the March 15 letter was a remittance for the monthly payment based on the described non-default contract rate of 5.85% and the collateral valued at $1,000,000. The Debtors sent McFarland Bank an identical letter and additional payment in that amount on April 15, 2013.

The Debtors filed their plan of reorganization on April 5, 2013, and filed their disclosure statement and budget on April 16, 2013. As described in the disclosure statement, the proposed plan provides for treatment of McFarland Bank's claim as only $2,217,000 but as fully secured, and proposes to pay that claim in full with 4% *a.p.r.* interest in monthly installments calculated using a thirty-year amortization schedule for 85 months with a balloon payment in the final month. The budget attached to the disclosure statement provides that the Debtors will pay McFarland Bank $1,973,667 in the year 2020 and states that the Debtors do not intend to liquidate any assets to fund the plan. Instead, the budget discloses that the Debtors hope to obtain a "loan refinance" of $1.9 million in 2020. The plan also includes a provision whereby the existing equity holder of 11447 Second Street I, LLC, Gregg Raupp, will contribute $1,000 per Debtor for purchase of a new 100% ownership in each of the Debtors.[5] The disclosure statement identifies existing cash deposits, ongoing rents and income from the continued operation of the business, contributions from equity holders, and eventually a refinancing by a third party lender as sources of funding for the plan.

The Debtors' description of McFarland Bank's allowed secured claim found in their disclosure statement states that the Debtors "accept the value from" a purported appraisal for $2,409,000 purportedly received from McFarland Bank "[f]or purposes of the Plan and

---

[5] This provision includes an option for certain other existing equity holders to purchase a 100% ownership interest in certain of the Debtors for the same price.

Disclosure Statement" and therefore will treat McFarland Bank's claim as fully secured. However, in the liquidation analysis section of their disclosure statement, the Debtors state that they have estimated the Shopping Center "as having a value of approximately $1,000,000 based on an appraisal dated February 1, 2013."

At the request of the parties, an evidentiary hearing took place on April 17, May 9 and June 4, 2013. Despite the time allowed for the presentation of their respective cases, the parties called only four persons to testify: the Shopping Center's current property manager (called by both parties); a bank official – the self-described "lead person dealing with the customer" (McFarland Bank's witness); the listing broker for the Shopping Center (Debtors' witness); and the Debtors' equity holder Mr. Raupp.[6] In addition, both sides placed into evidence a number of exhibits, including the Debtors' disclosure statement and the March and April 15, 2013 letters. The bank also asked the court to take notice of the value listed by the Debtors under oath in connection with their petitions.[7]

As noted above, the value of the property is a key factor for several issues raised by the motion for stay relief, including whether the Debtors have equity in the property, McFarland Bank's interest in the property and rights under the Bankruptcy Code, and the feasibility of the Debtors' proposed plan. But, while both parties alluded to two or more appraisals of the value of the property being prepared in 2012, referencing a purported "$2.4 million appraisal" and a

---

[6] Curiously, although the Debtors' listing broker is officed in Roscoe and testified about other aspects of the property and of other nearby strip malls, neither party attempted to question him about the alleged appraisals of the property or the value of the Shopping Center.

[7] A bankruptcy court may take judicial notice of the petition and schedules filed on the court's own docket. See, e.g., Frierdich v. Mottaz, 294 F.3d 864, 870 (7th Cir. 2002) ("The bankruptcy judge did not err by taking judicial notice of the schedules filed in the underlying bankruptcy proceeding."); In re Miller, 493 B.R. 55, 56 n.1 (Bankr. N.D. Ill. 2013).

purported "$1 million appraisal" in their briefs and at trial, neither side called a witness competent to offer an opinion about the appraised value of the Shopping Center.[8] Further, while McFarland Bank elected to stand on the Debtors' admitted value from their bankruptcy schedules, the Debtors did not attempt to offer competent evidence to controvert their own sworn statements about the property's value.

McFarland Bank's party witness, one of its officers, did acknowledge that one of the bank's exhibits in evidence, a cash flow summary prepared by the bank, contains a reference to a July 19, 2012, appraisal of the Shopping Center for $2,409,000. The same witness, however, did not testify to his personal knowledge about the preparation of the appraisal except to say that he disagreed with the methodology used in that appraisal. The Debtors called Mr. Raupp, the principal of one of the Debtors, who vaguely testified that the Debtors had used both $2.4 million and $1 million as values for the Shopping Center in formulating the proposed plan. Neither side presented testimony evidence at trial to establish a foundation for either of the purported appraisals attached to the motion nor did the Debtors furnish credible, admissible evidence controverting the admitted property value contained in the Debtors' schedules.

---

[8] With their original motion, McFarland Bank attached without more two alleged appraisal reports for the Shopping Center. The first, dated August 13, 2012, purports to be a "Summary Appraisal Report" prepared for McFarland Bank. It claims to determine the market value of the property to be $2,409,000 as of July 19, 2012. The second attachment is an alleged "Summary Appraisal Report" prepared for the Debtors' principal Mr. Raupp that is dated February 1, 2013. Debtors' second report purports to opine that the property's market value, "As Is," was $1,000,000 as of December 19, 2012. Neither report was offered into evidence during the hearing. Generally, documents simply attached to a motion without more are not properly admitted into evidence and not considered by the court. See, e.g., Sec'y of Labor v. DeSisto, 929 F.2d 789, 796 (1st Cir. 1991) (error for district court to refer to "certain depositions that had not been put into evidence"); In re Watson, 402 B.R. 294, 296 (Bankr. N.D. Ind. 2009) (exhibits "merely attached to a memorandum of law" had "no evidentiary effect"); In re Holly's Inc., 190 B.R. 297, 301 (Bankr. W.D. Mich. 1995) (documents attached to brief "were not properly admitted into evidence and, therefore, cannot be considered by this court in ruling"). Moreover, without proper support and foundation – such as the testimony of the appraiser – the appraisal reports are inadmissible hearsay. See Desisto, 929 F.2d at 796; Watson, 402 B.R. at 296.

The fact that the Debtors stated that the value was $1.2 million in their schedules filed with the court and supported by a declaration signed under penalty of perjury and the fact that the Debtors used $1,000,000 in determining how much interest they claimed they were required to pay to McFarland Bank in March and April 2013 carry more weight than a bank document's unexplained reference to a $2.4 million appraisal. The Debtors' references to purported values of both $2.4 million and $1 million in their disclosure statement and in the testimony of their principal as to the same appear at best to be self-serving attempts to utilize whichever value that was more convenient to the argument they were making at the time. Thus, after careful consideration of the Debtors own admissions in their schedules of record and the testimony of the witnesses during the hearing on the motion, the court must conclude that the weight of the evidence presented on the issue of value shows the value of the Shopping Center to be approximately $1,200,000, which is less than the undisputed amount of McFarland Bank's security interest in that collateral.

## DISCUSSION

McFarland Bank seeks relief from the automatic stay in order to resume its foreclosure proceeding against the Shopping Center. The secured creditor expressly relies on subparts (1), (2) and (3) of Section 362(d) for its motion. As the party requesting relief from the stay, McFarland Bank has the burden of proof on the issue of the Debtors' equity in the Shopping Center. 11 U.S.C. § 362(g). The Debtors have the burden of proof on all other issues. Id.

Although Section 362(d) "is written in mandatory terms, the bankruptcy court has discretion whether and to what extent it will grant relief from the stay." In re Williams, 144 F.3d

544, 546 (7th Cir. 1998); see also In re Batista-Sanechez, 493 B.R. 521, 528 (Bankr. N.D. Ill. May 31, 2013). Hearings on stay relief "may be summary in character—strictly limited to an examination of the adequacy of protections for creditors' interests and other equitable considerations." In re McGaughey, 24 F.3d 904, 906 (7th Cir. 1994) (citing In re Vitreous Steel, 911 F.2d 1223, 1232 (7th Cir. 1990) (noting that "the issues considered at a § 362 hearing are limited strictly to adequacy of protection, equity, and necessity to an effective reorganization")). Furthermore, the need to resolve a motion for relief from stay is even more expedited where, as here, the debtor is a single-asset real estate debtor. See, e.g., In re RYYZ, LLC, 490 B.R. 29, 34 (Bankr. E.D.N.Y. Apr. 4, 2013) (Section 362(d)(3) "is designed to protect secured creditors by requiring debtors to act quickly, either by filing a confirmable plan within a prescribed timeframe or by compensating the creditor with statutory payments.").

The court finds that McFarland Bank met its burden of demonstrating that the Debtors lack equity in the Shopping Center and that the Shopping Center is not necessary to an effective reorganization. Having found that McFarland Bank is entitled to relief under Section 362(d)(2), the court need not discuss the bank's alternative arguments under subsections (d)(1) or (d)(3).

Section 362(d)(2) provides that:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> ...
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization;

11 U.S.C. § 362(d)(2).

Lack of Equity

As noted above in the court's factual findings, the weight of the evidence shows that the Shopping Center is worth approximately $1,200,000. The undisputed testimony presented by McFarland Bank establishes that it has a claim secured by the property for $2,304,424.03. Even if the court were to accept the $2,187,500 value of the claim listed by the Debtors in their schedules or the $2,217,000 value of the claim listed by the Debtors in their disclosure statement, McFarland Bank's claim secured by the mortgage would still exceed the value of the property by nearly $1,000,000. McFarland Bank therefore, has met its burden to prove that the Debtors "do[] not have an equity" in the Shopping Center.

Necessity for Reorganization

In order to successfully resist a motion under Section 362(d)(2), the debtor in possession must show not only "that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*." United Sav. Ass'n v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 375-76 (1988). This requires a showing that there is "a reasonable possibility of a successful reorganization within a reasonable time." Id. at 376. While "bankruptcy courts demand less detailed showings during the four months in which the debtor is given the exclusive right to put together a plan," the Supreme Court has held that "even within that period lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief." Id.

Although a debtor need not necessarily definitively prove that a specific plan will be confirmed in order to survive a motion to lift the stay under Section 362(d)(2), the requirements

for confirmation under the Bankruptcy Code nonetheless should be taken into account. An "effective reorganization" requires a "confirmable plan" which in turn means that the requirements for confirmation under Section 1129 must be able to be met. Edgewater Walk Apartments v. MONY Life Ins. Co., 162 B.R. 490, 498 (N.D. Ill. 1993). Thus, for example, the "difference between a section 362(d)(2) analysis and a section 1129 analysis is in the *level of scrutiny* to which Debtor's feasibility evidence is subjected, *not* in the factors to be considered in assessing feasibility." Id. at 499. Generally, the level of scrutiny varies depending on the stage the case is in, with "the debtor's burden of proving that successful reorganization may be reasonably expected ... viewed as a continuum with the scales tipping in favor of the debtor in the early stages and the burden of proof becoming greater in the later stages." Id. at 499 (citing In re Ashgrove Apts. of DeKalb County, Ltd., 121 B.R. 752, 756 (Bankr. S.D. Ohio 1990)).

Here, we are now more than eight months past the petition date – well beyond the 90-day period for a single asset real estate debtor to file a plan or commence interest payments to avoid the lifting of the stay under Section 362(d)(3). These Chapter 11 cases also are several months past the initial 120-day exclusivity period for a debtor to file a plan under Section 1121(b).[9]

Over the course of the two-and-one-half day trial on the motion, the parties presented evidence and argument over whether the Debtors can find and maintain tenants who will generate sufficient rent to meet monthly expenses and upkeep and the monthly payments required under the proposed plan. Because the value of the Shopping Center has been determined to be at most $1.2 million, however, the most significant obstacle confronting the

---

[9] On June 5, 2013, the initial deadline of 180 days for the debtor to have a plan *accepted* to maintain the exclusivity period under Section 1121(c) was extended through August 19, 2013, by order on Debtors' motion. Today, the court granted the Debtors' request to further extend the deadline through September 18, 2013.

Debtors is not their ability to cover these expenses while making the proposed plan payments. Rather, the fundamental issue with the Debtors' proposed plan is that it is predicated on the Debtors obtaining a refinancing loan of at least $1.9 million by 2020. The Debtors offer only speculation about this and have not demonstrated how they will be able to obtain this replacement loan with the Shopping Center as their only collateral.

McFarland Bank presented testimony that a commercial lender is unlikely to extend a loan secured by commercial property for more than the value of the property and even then would likely require a down payment or equity exceeding the loan balance by at least 20 or 25%. The Debtors' evidence did not demonstrate that the value of the Shopping Center is reasonably expected to increase between now and 2020, let alone double in value. Nor did the Debtors provide evidence that an alternative source of funding is available to them.

Section 1129(a)(11) requires that a plan be feasible. 11 U.S.C. § 1129(a)(11) (requiring that confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan"). The only plan that the Debtors have proposed relies on their ability to obtain a loan of nearly $2 million in 2020. They have not demonstrated that they will be able to obtain such a loan so as to not default on their proposed plan when the $1.9 million payment to McFarland Bank comes due in 2020. See, e.g., In re GAC Storage El Monte, LLC, 489 B.R. 747, 756 (Bankr. N.D. Ill. Mar. 19, 2013) (plan not feasible because "Debtor cannot demonstrate its ability to execute on a refinance or full payment sale by the maturity date"); In re 4848, LLC, 490 B.R. 343 (Bankr. E.D. Wisc. Apr. 8, 2013) (plan not feasible where "plan is sustainable only if every eventuality—in life and in court—falls the

debtor's way"). Accordingly, this court cannot conclude from the evidence properly before it that the proposed plan – the only plan proposed by the Debtors during the more than eight months that have elapsed since the commencement of their Chapter 11 cases – has been shown to have a reasonable possibility of being confirmed or completed.

Accordingly, the Debtors, have not met their burden under Section 362(d)(2) to prove that the property is essential for an effective reorganization that is in prospect.

## CONCLUSION

For the foregoing reasons, the Court finds that McFarland Bank is entitled to relief from the automatic stay as to the Shopping Center pursuant to Section 362(d)(2).

The foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered giving effect to the determinations reached herein.

ENTER:

DATE: August 7, 2013

_____
Thomas M. Lynch
United States Bankruptcy Judge